UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMPLOYEE PAINTERS TRUSTS HEALTH AND WELFARE TRUST FUND,<br><br>Plaintiff,<br><br>v.<br><br>SCHMUCK BROTHERS, INC., et al.,<br><br>Defendants. | Case No. C08-0279-JPD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION AND SUMMARY CONCLUSION

The Plaintiff, Employee Painters Trust Health and Welfare Trust Fund ("the Trust Fund"), has filed this lawsuit against Defendants Schmuck Brothers, Inc., Bruce J. Sanders and Jane Doe Sanders (Mr. Sanders' wife), seeking recovery of funds that the Trust Fund alleges should have been paid for all non-bargaining unit employees of Schmuck Brothers, Inc.  The present matter comes before the Court on the Trust Fund's motion for summary judgment.  Dkt. No. 14.  Defendants have filed a response opposing the motion, Dkt. No. 16, to which the Trust Fund has replied, Dkt. No. 19.  After careful consideration of the motion, Defendants' opposition and the reply brief, the governing law, and the balance of the record, the Trust Fund's motion for summary judgment, Dkt. No. 14, is DENIED.

ORDER
PAGE - 1

## II. FACTUAL BACKGROUND

On April 30, 2004, Defendant Bruce J. Sanders, the President of Schmuck Brothers, Inc., executed a "Special Agreement for Participation" ("Special Agreement"), wherein Schmuck Brothers agreed to pay employee benefit contributions to the Trust Fund for all non-bargaining unit (*i.e.*, management) employees who worked at least 80 hours or more per month. Dkt. No. 15, Exh. A. The Chairman of the Trust Fund also executed, but did not date, the Special Agreement. *Id.*

The Special Agreement is a supplemental agreement to the Collective Bargaining Agreement between Schmuck Brothers and the International Union of Painters and Allied Trades District Council No. 5 ("the Union"), and permits all non-bargaining unit employees to be covered under the Trust Fund's health insurance plan. For the relevant period, the Special Agreement only concerned two non-bargaining unit employees: James Sanders (the adult son of Defendants Bruce J. Sanders and Jane Doe Sanders) and Gilbert Kerr. Dkt. No. 15, Exh. B.

The Special Agreement provides:

> The contribution amount shall be periodically established by the Board of Trustees and shall be due and payable on the 1st (first) day of the month following the month in which the required employment hours were earned by the covered employees.

Dkt. No. 15, Exh. A, ¶ 3.

The Special Agreement also provides:

> The Effective Date of coverage for non-bargaining unit employees shall be the first day of the month following the date of the Union Recommendation (below) and receipt of the full amount of required contributions, provided however that actual eligibility shall not be approved until this Special Agreement is approved by the Board of Trustees and executed by its duly authorized officers.

Dkt. No. 15, Exh. A, ¶ 5.

However, on the page of the Special Agreement immediately following Paragraph 5, for reasons that do not appear in the record, the section entitled "Union Recommendation" is

completely blank. Dkt. No. 15, Exh. A. Among other things, there is no name, signature, or date in the 'Union Recommendation' section. *Id.*

At no time after April 30, 2004, the date Defendant Bruce Sanders executed the Special Agreement, did the Trust Fund notify Schmuck Brothers that the Union had recommended the Special Agreement, or of date on which the recommendation occurred. Dkt. No. 17, ¶ 7. Indeed, when, if ever, the Union recommended the Special Agreement does not appear in the record before the Court.

Since 1981, Schmuck Brothers has never made any contributions to the Trust Fund on behalf of any management employees other than Mr. and Mrs. Sanders. Dkt. No. 17, ¶ 2. In addition, the Trust Fund has never invoiced Schmuck Brothers for insurance premiums for any management employees other than Mr. and Mrs. Sanders. Dkt. No. 17, ¶ 8. To this day, Schmuck Brothers continues to pay the insurance premiums only for Mr. and Mrs. Sanders. *Id.*

Schmuck Brothers has paid 100% of James Sanders' medical expenses since he returned from college as a full-time employee in 1999. *Id.*, ¶ 3. Regarding Gilbert Kerr, Schmuck Brothers paid him 80% of the union medical contribution directly on his payroll check until he retired in 2005, as he was covered by his wife's medical insurance. *Id.*, ¶ 4. Schmuck Brothers only paid Kerr 80% of the union medical contribution because it became subject to payroll taxes when it was added to his payroll check. *Id.* Other than Mr. and Mrs. Sanders, no management employee has ever made a claim for health benefits from the Trust Fund.

The Trust Fund's motion for summary judgment is now before the Court. Dkt. No. 14. The motion seeks a recovery of $34,553.13 from Schmuck Brothers. *Id.* This represents $25,576.00 in employee benefit contributions that the Trust Fund alleges are owed for the period from July 1, 2004 to June 30, 2007, liquidated damages in the amount of $3,252.08, interest in the amount of $4,985.05, and audit fees in the amount of $740.00. *Id.* In addition, the Trust Fund seeks costs in the amount of $974.74, and attorneys' fees in the amount of $3,801. Dkt. No. 15, ¶¶ 6-7.

### III. JURISDICTION

Pursuant to 28 U.S.C. § 636(c), the parties have consented to having this matter heard by the undersigned Magistrate Judge. Dkt. No. 12. The Court has jurisdiction pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a) and §§ 502(a)(3) and 502(e)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), and 29 U.S.C. §§ 1132(a)(3) and 1132(e)(2). Venue is proper under 29 U.S.C. § 1132(e)(2).

### IV. DISCUSSION

A. <u>Summary Judgment Standard</u>

"Claims lacking merit may be dealt with through summary judgment" under Rule 56 of the Federal Rules of Civil Procedure. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

B.  <u>Plaintiff Is Not Entitled To Judgment As A Matter Of Law</u>.

"Contract terms are to be given their ordinary meaning, and whenever possible, the plain language of the contract should be considered first." *Yang Ming Marine Transp. Corp. v. Okamoto Freighters LTD.*, 259 F.3d 1086, 1092 (9th Cir. 2001) (internal quotations omitted). When the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1549 (9th Cir. 1990). "A written contract must be read as a whole and every part interpreted with reference to the whole." *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983). In addition, "[p]reference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Id.*

Here, the Court cannot conclude as a matter of law that there was ever an enforceable agreement between the parties. While each party *signed* the Special Agreement, it appears from the record that virtually nothing happened thereafter. The Special Agreement expressly contemplates actions by both parties in order to effectuate its terms, and the record does not indicate that those actions ever occurred. To illustrate, while the Special Agreement provides that the contribution amount "shall be due and payable on the 1st (first) day of the month following the month in which the required employment hours were earned by the covered employees," Dkt. No. 15, Exh. A, ¶ 3, the same paragraph provides that "the contribution amount shall be periodically established by the Board of Trustees." However, there is no evidence in the record that this was done, or that Schmuck Brothers was notified of the contribution amount and that it needed to begin paying that amount. The evidence in the record is to the contrary, as Mr. Sanders states in his declaration that the Trust Fund has never invoiced Schmuck Brothers for insurance premiums for any management employees other than Mr. and

Mrs. Sanders, Dkt. No. 17, ¶ 8, and that the Trust Fund never notified Schmuck Brothers that it needed to begin paying a different contribution amount, Dkt. No. 17, ¶ 7.

In addition, the Special Agreement provides that "[t]he Effective Date of coverage for non-bargaining unit employees shall be the first day of the month following the date of the Union Recommendation (below) . . . ." Dkt. No. 15, Exh. A, ¶ 5. However, on the page of the Special Agreement immediately following Paragraph 5, the section titled "Union Recommendation" is completely blank. Dkt. No. 15, Exh. A. Among other things, there is no name, signature, or date in the "Union Recommendation" section. *Id.* There is no evidence in the record that the Union in fact ever recommended the Special Agreement. In any case, at no time has the Trust Fund notified Schmuck Brothers that the Union had recommended the Special Agreement, or of date on which the recommendation occurred. Dkt. No. 17, ¶ 7.

Moreover, Paragraph 5 of the Special Agreement also provides that the Effective Date of coverage shall not occur until "receipt of the full amount of required contributions . . . ." Dkt. No. 15, Exh. A, ¶ 5. However, because there is no evidence that Schmuck Brothers was notified of the contribution amount for the other management employees and, consequently, Schmuck Brothers never paid a contribution amount for management employees other than Mr. and Mrs. Sanders (for whom it has always paid), Dkt. No. 17, ¶¶ 7-8, the Effective Date could not have occurred.

Lastly, Paragraph 5 provides that "actual eligibility shall not be approved until this Special Agreement is approved by the Board of Trustees and executed by its duly authorized officers." Dkt. No. 15, Exh. A, ¶ 5. However, there is no evidence in the record that the Special Agreement was ever approved by the Trust Fund's Board of Trustees and executed by its duly authorized officers. This would also would preclude the eligibility of Schmuck Brothers' other management employees for coverage under the health insurance plan, which would render the Special Agreement illusory.

ORDER
PAGE - 6

In its reply, the Trust Fund argues that the parties' subsequent conduct after executing the Special Agreement made it "fully operative." Dkt. No. 19 at 3. In interpreting a contract, a court may determine the parties' intent not just from the plain language of the contract, but also from the subsequent acts and conduct of the parties to the contract. *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 907-908 (9th Cir. 2001).

The Trust Fund asserts that Schmuck Brothers "has been making employee benefit contributions on behalf of some of its non-bargaining unit employees[,] just not on all of them." *Id.* Moreover, the Trust Fund has allowed "all of the non-bargaining unit employees . . . access to its health insurance plan." *Id.* at 4. However, Schmuck Brothers has only been making employee benefit contributions on behalf of Mr. and Mrs. Sanders, which is has done since 1981; it has not made employee benefit contributions on behalf of any other management employee, either before or after April 30, 2004. Dkt. No. 17, ¶¶ 2, 8. Therefore, Schmuck Brothers' subsequent conduct does not support an interpretation that there was an enforceable agreement between the parties.

With respect to the Trust Fund, while it may have allowed all non-bargaining unit employees "access" to its health insurance plan, in reality the health insurance plan could have only become "accessible" to two additional employees (James Sanders and Gilbert Kerr) and the evidence reveals that neither of them used it. Schmuck Brothers (not the Trust Fund) has paid 100% of James Sanders' medical expenses since he returned from college as a full-time employee in 1999, Dkt. No. 17, ¶ 3, and paid Gilbert Kerr 80% of the union medical contribution directly on his payroll check until he retired in 2005, as he was covered by his wife's medical insurance, Dkt. No. 17, ¶ 4. (Schmuck Brothers only paid Kerr 80% of the union medical contribution because of payroll taxes. *Id.*) Therefore, the Trust Fund has not provided health insurance coverage to other management employees beyond Mr. and Mrs. Sanders, and no management employee has ever made a claim for health benefits from the Trust Fund other than Mr. and Mrs. Sanders. Accordingly, based on the record before the

Court, the operative conduct of the parties does not permit the Court to conclude as a matter of law that Special Agreement is fully operative to cover James Sanders and Gilbert Kerr.

## V. CONCLUSION

For the foregoing reasons, the Trust Fund's motion for summary judgment, Dkt. No. 14, is DENIED.

DATED this 23rd day of December, 2008.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge